UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL KHEIBARI,

    Plaintiff,

v.

    Case No. 14-11496
    Honorable Linda V. Parker

RITE AID CORPORATION,

    Defendant.
_____/

# OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

On April 14, 2014[1], Plaintiff Michael Kheibari, without the assistance of counsel, initiated this lawsuit against Defendant, Rite Aid Corporation, alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. § 623, and the Michigan Elliot-Larsen Civil Rights Act ("ELCRA"), MICH. COMP. LAWS § 37.2202. Plaintiff has since retained counsel to represent him in this matter. (ECF No. 10.) Given that Mr. Kheibari passed during the pendency of this litigation, the Court granted Plaintiff's request to substitute

---

[1] The case initially was assigned to the Honorable Lawrence P. Zatkoff, now deceased. On February 22, 2015, after his passing, the matter was reassigned to the undersigned pursuant to Administrate Order 15-AO-015.

Rosita Amini, Mr. Kheibari's daughter and Personal Representative of his estate, as the proper-plaintiff[2] on September 26, 2017.

Presently before the Court is Defendant's motion for summary judgment, filed pursuant to Federal Rule of Civil Procedure 56 on February 28, 2017. (ECF No. 66.) Plaintiff filed a response to the motion on March 24, 2017, and Defendant filed a reply brief on April 6, 2017. (ECF Nos. 68 & 70.) For the reasons that follow, the Court is granting Defendant's motion for partial summary judgment.

## I.     Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[2] Although Rosita Amini is now the proper-plaintiff in this case, "Plaintiff" will refer to the decedent, Michael Kheibari.

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

## II. Factual and Procedural Background

Born in Iran on July 16, 1949, Plaintiff became an American citizen in 2003. (ECF No. 57 at Pg ID 938.) In his First Amended Complaint, Plaintiff indicated that he began working at Rite Aid in August 2007 as an assistant/floating manager. (*Id*.) From 2007-2011, Plaintiff interacted with his direct supervisors, general store

3

managers, without incident. (*Id.*) Around November 2011, Daniel Snyder ("Snyder") was assigned to Plaintiff's district as the new District Manager, Plaintiff's second-level supervisor. (*Id.* at Pg ID 939.)

According to Plaintiff, during a telephone conversation with Snyder on March 19, 2012, Snyder complained about Plaintiff's accent and language, as well as age. Snyder asked Plaintiff, "Michael what's your Nationality?" (*Id.* at Pg ID 939-40.) Upon telling Snyder his nationality, Plaintiff stated that Snyder remarked: "I don't know who hired you, but I am not comfortable with your language and accent which is coming from your country of origin." (*Id.* at 940.) Plaintiff, in an attempt to overlook Snyder's remarks, redirected the conversation to the possibility of a promotion. Snyder responded: "Michael let's get real. I was dealing with you for a couple of months and I have serious concern about your accent, language and listening because of your background and country of origin." (*Id.* at Pg ID 940-41.) Snyder then said "I also have some doubt about your ability to do hard work at your age . . . . I don't care about opinions of your former DMs, in my opinion you are not eligible for any future promotion." (*Id.* at Pg ID 941.) Snyder continued, "I am also thinking, it's time to relieve you from your duty to enjoy the rest of your life and creating space for a new young generation." (*Id.*) Plaintiff indicated those statements caused him to fear his job security and led him to his first suicidal thoughts. (*Id.*)

4

At some point after Plaintiff's conversation with Snyder, Plaintiff contacted Rite Aid Benefits Center to inquire about his life insurance in the event of his suicide. (*Id.* at Pg ID 942.) Upon being alerted of Plaintiff's call, Janice Farrell ("Farrell"), Rite Aid's Associate Relations Manager, met with Plaintiff and allowed Plaintiff a brief medical leave.

Plaintiff complained Snyder made remarks about Plaintiff's accent and language during weekly conference calls, often made store visits and would shake the hands of every employee except his. (*Id.* at Pg ID 943.) On June 6, 2012, Plaintiff met with Rite Aid Michigan Regional Manager, David Rickett ("Rickett"), and shared his concerns about Snyder's discriminatory treatment towards him. (*Id.* at Pg ID 943-44.)

On November 7, 2012, believing he was interviewing for a store manager position, Plaintiff met with Snyder and, instead, was reprimanded for failing to complete a Suspicious Activity Report ("SAR") when an elderly African American couple purchased prepaid cards in large cash amounts. (*Id.* at Pg ID 946-47.) According to Plaintiff, Snyder asked, "Are you here to apply for this position? . . . You are too old for this," and "You cannot do this on my watch. . . . because I don't like your language and I have a problem with your accent and you are too old for this. It's time to go home." (*Id*. at Pg ID 947.) Plaintiff indicated that following the November 7, 2012 meeting, Snyder became more hostile. (*Id.*)

5

On November 14, 2012, Plaintiff emailed Rite Aid's upper management with the subject line "Urgent help" complaining of Snyder's discriminatory behavior and stating "I don't feel safe." (*Id.* at Pg ID 947-48.) On November 19, 2012, Rite Aid informed Plaintiff: "it will take a long time, no immediate action." (*Id.* at Pg ID 948.) After closing the store for the night on November 23, 2012, Plaintiff attempted suicide on Rite Aid's property. (*Id*. *Id*. at Pg ID 949.) Plaintiff left a suicide note describing Snyder's discriminatory treatment as the reason for his suicide. (*Id*.)

Plaintiff was placed on medical leave on November 24, 2012, which was extended on several occasions at Plaintiff's request and ultimately extended until June 1, 2013. (*Id.* at Pg ID 950; *see also* ECF No. 66 at Pg ID 1070.) On May 17, 2013, upon being notified of Plaintiff's intentions to return to work, Rite Aid sent Plaintiff a letter requesting fitness for duty certifications from Plaintiff's healthcare providers. (ECF No. 66-13 at Pg ID 1222.) One of the questions[3] included in the certification raised a concern for Dr. Kamran Zakaria, Plaintiff's primary and treating physician. Dr. Zakaria consulted Plaintiff about the completion of the form and was instructed not to complete the form. (ECF No. 57 at Pg ID 951; ECF No. 66 at Pg ID 1071; ECF No. 68 at Pg ID 1379.) Instead, on May 22, 2013, Dr.

---

[3] The question was as follows: "Are you able to assure us, with reasonable certainty, that in your professional opinion Mr. Kheibari no longer believes that Rite Aid and/or any of his colleagues or supervisors are responsible for his suicide attempt? If your answer is "yes," provide specific information on which you are basing your professional opinion." (ECF No. 66-13 at Pg ID 1228.)

Zakaria faxed Rite Aid a cover sheet indicating Plaintiff asked that he not complete the form because he had been approved for lifetime disability benefits. (*Id.* at Pg ID 1010-17; ECF No. 66-15 at Pg ID 1235.)

Plaintiff attempted suicide for the second time on May 23, 2013. (ECF No. 66 at Pg ID 1071.) On June 22, 2013, Plaintiff contacted Rite Aid to request sick leave for an additional three months because of his second suicide attempt. (*Id.* at Pg ID 1071; ECF No. 66-16 at Pg ID1237.) According to Abbe Barnett ("Barnett"), Leave of Absence Team Leader for Rite Aid, she consulted with Rite Aid's legal department and concluded they could not accommodate Plaintiff's request for an additional three month medical leave. (ECF No. 66 at Pg ID 1071; ECF No. 66-17 at Pg ID 1241.) Furthermore, Plaintiff's request was not supported by any medical opinion. (ECF No. 66 at Pg ID 1071.)

Plaintiff was formally terminated on June 26, 2013. (ECF No. 57 at Pg ID 951.)

### III. Applicable Law and Analysis

Defendant alleges that no genuine issue of material facts as to Counts III, IV, VI, VIII, IX, X[4], and XI. Defendant argues that its motion for partial summary judgment should be granted because (1) Plaintiff was unqualified to perform the functions of the job at the time of his termination; (2) Plaintiff cannot show any

---

[4] Although Defendant references Count X, there is no discussion as to Count X in Defendant's brief. Furthermore, Defendant explicitly states in its conclusion that Count X remains before the Court. (ECF No. 66 at Pg ID 1087.)

7

other Rite Aid employee who maintained their position with Rite Aid following a seven month leave of absence; (3) Plaintiff's termination was for a legitimate, nondiscriminatory reason; (4) Plaintiff remained a Rite Aid employee following his November 23, 2012 medical leave; (5) Plaintiff failed to exhaust administrative remedies for his retaliatory discharge or harassment claim under Title VII and the ADEA; and (6) Plaintiff retaliatory constructive discharge claim was not filed with the Equal Employment Opportunity Commission ("EEOC") within the 300-day limitations period.

Plaintiff withdrew Counts IX and XI, retaliation counts under Title VII and the ADEA. (ECF No. 68 at Pg ID 1368.)

**A. Discrimination Claims Under Title VII, ELCRA, and the ADEA**

Plaintiff brings discrimination claims under Title VII, ELCRA, and the ADEA. "Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U. S. C. § 2000e *et seq.*, prohibits employers from discriminating on the basis of race, color, religion, sex, or national origin, or retaliating against their employees for opposing or seeking relief from such discrimination." *Green v. Brennan*, 136 S. Ct. 1769, 1773-74 (2016). The ADEA, 29 U.S.C. § 623(a), in part, makes it unlawful for an employer to discharge an employee based on the employee's age. *Marsh v. Associated Estates Realty Corp.*, 521 F. App'x 460, 465 (6th Cir. 2013). Under ELCRA, "[a]n employer shall not do any of the following: (a) . . .

discharge, or otherwise discriminate against an individual with respect to . . . national origin, age . . . ." MICH. COMP. LAWS §37.2202(1)(a).

Discrimination claims under Title VII, the ADEA, and ELCRA are analyzed under the same evidentiary framework. *Deleon v. Kalamazoo Country Rd. Comm'n*, 739 F. 3d 914, 918 (6th Cir. 2014); *see also Marsh*, 521 F. App'x at 465; *Goldfaden v. Wyeth Labs.*, 482 F. App'x 44, 47 n.3 (6th Cir. 2012).

The Court now turns to Plaintiff's discrimination claims based on constructive and actual discharge.

### a. Constructive Discharge

Because Plaintiff cannot show he actually resigned, he cannot prove he was constructively discharged based on his national origin and age in violation of Title VII, ELCRA, and the ADEA. For constructive discharge, Plaintiff must show "(1) 'the employer . . . deliberately create[d] intolerable working conditions, as perceived by a reasonable person,' (2) the employer did so 'with the intention of forcing the employee to quit,' and (3) 'the employee . . . actually quit.'" *Goldfaden*, 482 F. App'x at 47. The Court must consider the intent of the employer and employee when determining a constructive discharge claim. *Id.*

The Sixth Circuit held in *Ross v. Mich. State Univ. Bd. Of Trs.*, No. 11-2278, 2012 U.S. Dist. LEXIS 17338, at *6 (6th Cir. June 20, 2012), that plaintiff's constructive discharge claim was meritless because plaintiff had not actually

9

resigned from the university. The plaintiff in *Ross*, who had resigned as Director of the Logistics Doctoral Program, maintained his employment as a tenured associate professor and continued to receive his pay and benefits. *Id.*

Although Plaintiff contends he was constructively discharged on November 23, 2012, the record is replete with evidence of Plaintiff's subjective belief that he remained an employee of Rite Aid. Plaintiff continuously expressed an intention to return to work following his medical leave. He sent a number of requests to HR for extensions to his medical leave. (ECF No. 66-11 at Pg ID 1203; ECF No. 66-12 at Pg ID 1213.) Again, in an email correspondence between Plaintiff and Farrell regarding Plaintiff's clearance to return to work, Plaintiff stated "I will do whatever the letter says. . . . I love my Rite Aid." (ECF No. 66-14 at Pg ID 132.) Finally, Plaintiff emailed Rite Aid on June 22, 2013, a day before his formal discharge, requesting additional sick leave.

Moreover, Plaintiff continued to receive benefits from Rite Aid, including short-term and long-term disability. (ECF No. 66-20 at Pg ID 1248.) In a December 31, 2012 letter to Plaintiff regarding his short-term disability, the letter stated "Your *employer* has been advised of your approval. The benefit will be provided to you through your *employer*." (*Id.*) (emphasis added). Likewise, in an April 9, 2013 letter concerning Plaintiff's long-term disability benefits, the letter stated: "We have completed our review of your claim for Long Term Disability

10

(LTD) benefits . . . issued to Rite Aid Corporation." (ECF No. 66-23 at Pg ID 1280.) Though Plaintiff maintains he was constructively discharged on November 23, 2012, as in *Ross*, Plaintiff remained an employee of Rite Aid until June 22, 2013.

Plaintiff's actions are not consistent with one who resigned from a job because of intolerable work conditions. Plaintiff continuously held himself out to be an employee of Rite Aid—contacting HR for medical leave extensions and using benefits that were exclusive to Rite Aid employees. Plaintiff had every intention to return to Rite Aid at the conclusion of his medical absence. His absence on November 23, 2012 that he characterizes as a "constructive discharge" was, in fact, the starting date of his leave of absence. Plaintiff cannot prove that he was constructively discharged on November 23, 2012 because he did not actually resign from Rite Aid.

### b. Actual Discharge

Because Plaintiff cannot show that he was (1) qualified for the position he previously held or (2) another similarly situated employee was treated differently, he cannot prove he was actually discharged based on his national origin and age in violation of Title VII, ELCRA, and the ADEA. In order to establish a *prima facie* case of discrimination under Title VII, ELCRA, or the ADEA, the plaintiff must show "(1) he was a member of a protected class; (2) he was qualified for the

11

position held at the time of termination; (3) he was discharged; and (4) he was replaced by someone outside of the protected class" or was treated differently than similarly-situated, non-protected employees. *Rosenthal v. Faygo Bevs., Inc.*, No. 16-2262/16-2306, 2017 U.S. Dist. LEXIS 13036, at *6 (6th Cir. July 17, 2017); *see also Garret v. S.W. Med. Clinic*, 631 F. App'x 351, 355 (6th Cir. 2015). Specifically, for a claim under the ADEA, the plaintiff must prove by a preponderance of the evidence "that age was the 'but-for' cause of the" adverse employment action. *Marsh*, 521 F. App'x at 466. Whereas, for Title VII, the plaintiff must show unlawful discrimination was, at least, a "motivating factor" for the discharge. *Id.* at 465.

The plaintiff can make this showing using either direct or circumstantial evidence supporting an inference of discrimination. *Thrash v. Miami Univ.*, 549 F. App'x 511, 517 (6th Cir. 2014); *DiCarlo v. Potter*, 358 F. 3d 408, 414 (6th Cir. 2004). Evidence is direct if the fact-finder does not have to draw inferences. *Marsh*, 521 F. App'x at 465. "If inferences are required, the evidence is properly classified as circumstantial, and the plaintiff must satisfy the additional demands of the *McDonnell Douglas* framework." *Id.*

If plaintiff makes this showing, the burden then shifts to defendant to prove the adverse employment action was based on a legitimate, nondiscriminatory reason. *Id.* at 466. If defendant overcomes this burden, it then shifts back to

plaintiff who must show the reasons proffered by defendant are "mere pretext for intentional . . . discrimination." *Id.*

The record is devoid of any direct evidence of discrimination based on Plaintiff's age or national origin. Plaintiff's First Amended Complaint consists of alleged discriminatory statements made by Plaintiff's second-level supervisor and general manager, Snyder. However, "[s]tatements by decision makers unrelated to the decisional process itself cannot suffice to satisfy the plaintiff's burden of demonstrating animus." *Foster v. Michigan*, 573 F. App'x 377, 393 (6th Cir. 2014). In fact, Snyder testified that he was not consulted when Rite Aid decided to formally discharge Plaintiff in June 2013. (ECF No. 66-31 at Pg ID 1358.) Likewise, Barnett stated she issued the letter for Plaintiff's termination based on Plaintiff's failure to return to work after his seven month leave of absence. (ECF No. 66-17 at Pg ID 1241.) Additionally, there is no direct evidence of Barnett making any discriminatory statements to Plaintiff relating to his national origin and age either before or at the time of his termination.

Even assuming Snyder made the alleged discriminatory statements to Plaintiff, there is no causal connection between Rite Aid's decision to terminate Plaintiff and Snyder's alleged statements. Plaintiff had been on medical leave for seven months, having no direct contact with Snyder, which further underscores the lack of any direct evidence of discrimination. Moreover, there is no direct

13

evidence Plaintiff's national origin was a motivating factor for his termination, or that but-for his age he would not have been terminated. Therefore, because Plaintiff has failed to demonstrate any direct evidence to support his discrimination claims, Plaintiff's claims will be analyzed under the *McDonnell Douglas* framework.

Although Plaintiff can show that he was a member of a protected class—over the age of forty and Iranian—and he was discharged on June 2013, Plaintiff cannot show he was qualified for the position of assistant store manager and that he was replaced by someone outside of the protected class or treated differently than similarly situated non-protected employees.

**1. Plaintiff Was Not Qualified for the Job of Assistant Store Manager**

Plaintiff cannot show that he was qualified for the assistant store manager position at the time of his termination. To determine if Plaintiff was qualified, the Court must consider Plaintiff's "objective qualifications." *Wexler v. White's Fine Furniture, Inc.*, 317 F. 3d 564, 575 (6th Cir. 2003). Plaintiff is required to make a credible showing that he is, at least, minimally qualified or he "continued to possess the objective qualifications [he] held when [he] was hired." *Gamble v. JP Morgan Chase & Co.*, No. 16-6488, 2017 U.S. Dist. LEXIS 8379, at *21 (6th Cir. May 9, 2017) (alterations in original).

Defendant contends that Plaintiff's claim should fail because he was not qualified for the job given his receipt of benefits for short- and long-term disability, social security, and Michigan Unemployment Insurance. (ECF No. 66 at Pg ID 1077.) Most striking is Plaintiff's representation to the Social Security Administration ("SSA"), as well as to the administrative law judge ("ALJ") regarding his disability status. On December 7, 2012, less than a month after Plaintiff's leave of absence, Plaintiff filed an application with SSA for disability benefits. (ECF No. 66-24 at Pg ID 1286.) After Plaintiff appealed his denial, the ALJ held a hearing on November 3, 2014, which Plaintiff attended, and found "the claimant has been disabled from November 23, 2012, through the date of this decision," November 19, 2014. (*Id.*) The ALJ credited Plaintiff's own testimony regarding his disability:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, and that the claimant's statements concerning the intensity, persistence and limited effects of these symptoms are generally credible.

(*Id.* at Pg ID 1291.) The ALJ further found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.*)

15

Finally, on December 31, 2012, Plaintiff was approved for Rite Aid's short-term disability. On April 24, 2013, Plaintiff applied for Prudential's long-term disability benefits, indicating that he suffered from "depression, anxiety, partial memory loss, and background noise," and he could not perform "almost all" of the requirements of his job. (ECF No. 66-21 at Pg ID 1252.) Prudential approved Plaintiff's application for long-term disability benefits on May 22, 2013. (ECF No.66-22 at Pg ID 1273.) Finally, on July 17, 2014, Dr. Zakaria represented to the Michigan Unemployment Insurance Agency that Plaintiff had been disabled from November 24, 2012 through May 16, 2014. (ECF No. 66-25 at Pg ID 1299.)

In order to survive summary judgment, Plaintiff would need to provide a reasonable explanation as to why he represented to the ALJ during a hearing held on November 3, 2014, over a year after his termination, that he was disabled as of November 23, 2012. *Isotalo v. Kelly Servs.*, 945 F. Supp. 2d 825, 829 (E.D. Mich. May 14, 2013). Plaintiff has not put forth any evidence about his contradictory claims.

The record does not support that Plaintiff was qualified for the position of assistant store manager at the time of his June 23, 2013 termination. Assuming Plaintiff's termination date was November 23, 2012, Plaintiff, as well as Dr. Zakaria, represented to various insurance carriers that he was disabled as of November 23, 2012 and received benefits based on those representations.

Moreover, Plaintiff represented to the ALJ that he was disabled from November 23, 2012 through the date of the hearing, November 3, 2014. There is no mention of Plaintiff's physical and mental condition having stabilized on June 23, 2013 to support a claim that he was qualified for the job at the time of his termination. The record is clear that Plaintiff was unqualified for the position of assistant manager at the time of his termination.

### 2. Plaintiff Cannot Show a Similarly Situated Employee Was Treated Differently

Plaintiff fails to demonstrate he was treated differently than a similarly situated employee. The Sixth Circuit stated:

> While the precise aspects of employment that are relevant to determining whether the similarly situated requirement has been satisfied depend on the facts and circumstances of each case, this court has generally focused on whether the plaintiff and the comparable employee: (1) share the same supervisor; (2) are subject to the same standards; and (3) have engaged in the same conduct "without such differentiating mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."

*Barry v. Nobel Metal Processing, Inc.*, 276 F. App'x 477, 480-81 (6th Cir. 2008) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F. 3d 244, 325 (6th Cir. 1998).

There is no evidence before the Court of an assistant store manager who failed to return to work after a seventh month leave of absence and continued employment with Rite Aid. There is also no evidence before the Court of a

17

comparable employee who requested additional leave, without medical support, following a seventh month leave of absence and maintained their employment status.  As such, Plaintiff cannot make a showing that he was treated differently than a similarly situated, non-protected employee.

Even if Plaintiff establishes a *prima facie* case for his claims under Title VII, ELCRA, and the ADEA, Defendant has articulated a legitimate, nondiscriminatory reason for discharging Plaintiff on June 23, 2013.  The undisputed evidence establishes that Plaintiff failed to return to work after a seventh month leave of absence.  In an affidavit submitted in support of Defendant's motion, Barnett explained, "Mr. Kheibari was terminated because he did not return to work after being on a seven month leave of absence.  Rite Aid was unable to continue to hold Mr. Kheibari's job open. . . . Rite Aid recommended that Mr. Kheibari be eligible for re-hire at a later time." (ECF No. 66-17 at Pg ID 1242.)  Plaintiff cannot establish either his age or national origin was a pretext for his June 23, 2013 discharge.  *See Kuhn v. Washtenaw County*, 79 F. 3d 612, 628 (6th Cir. 2013) ("Kuhn's extended discretionary leave and his failure to return to work caused a shortage of available deputies in the Sheriff's Office and constituted an intervening reason for the County to terminate his employment.").

For the above reasons, the Court concludes that Plaintiff cannot prevail on his discrimination claims under Title VII, ELCRA or the ADEA.  Remaining

18

before the Court are Counts I, II, V, VII, and X, Plaintiff's claims for harassment and hostile work environment based on his national origin and age in violation of Title VII, ELCRA, and the ADEA and retaliation under ELCRA.

Accordingly,

**IT IS ORDERED**, that Defendant's motion for partial summary judgment is **GRANTED**.

**IT IS FURTHER ORDERED**, that Counts III, IV, VI, and VIII of Plaintiff's First Amended Complaint are dismissed.

**IT IS FURTHER ORDERED**, that Counts IX and XI of Plaintiff's First Amended Complaint are withdrawn by Plaintiff.

s/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE

Dated: September 26, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, September 26, 2017, by electronic and/or U.S. First Class mail.

s/ R. Loury  
Case Manager
