UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSITA AMINI, *as Personal*
*Representative of the Estate of*
*Michael Kheibari*,

        Plaintiff,

v.                              Case No. 4:14-cv-11496
                                  Hon. Linda V. Parker
RITE AID CORPORATION,       Mag. Judge Stephanie Dawkins Davis

        Defendant.
_____/

# OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 117)

On April 14, 2014, Michael Kheibari[1] ("Plaintiff") initiated this lawsuit against Defendant, Rite Aid Corporation, alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e–5(e)(1), the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. § 623, and the Michigan Elliot-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2201, *et seq.*

On September 26, 2017, this Court granted Defendant's motion for partial summary judgment and dismissed all of Plaintiff's claims related to his

---

[1] Given that Kheibari passed during the pendency of this litigation, the Court granted Plaintiff's request to substitute Rosita Amini, Kheibari's daughter and personal representative of his estate, as the proper-plaintiff. (ECF No. 78.) For clarity, the Court will continue referring to Kheibari as Plaintiff.

termination; the remaining claims relate only to his alleged harassment. (ECF No. 77.) Plaintiff claims that he was harassed on the basis of his age and national origin, and in retaliation for his complaints about workplace harassment. Presently before the Court is Defendant's motion for summary judgment, filed on January 31, 2019. (ECF No. 117.) The motion has been fully briefed. (ECF Nos. 117, 123, 128.) Finding the facts and legal arguments sufficiently presented in the parties' briefs, the Court is dispensing with oral argument pursuant to Local Rule 7.1(f)(2). For the reasons that follow, the Court is granting Defendant's motion for summary judgment.

## Factual and Procedural Background

Born in Iran on July 16, 1949, Plaintiff became an American citizen in 2003. (ECF No. 57 at 3, Pg. ID 938.) Plaintiff indicated that he began working at Rite Aid in August 2007 as an assistant/floating manager. (*Id*.) From 2007-2011, Plaintiff interacted with his direct supervisors and the general store managers without incident. (*Id.*) Although, throughout the same period, Plaintiff had multiple evaluations in which his supervisor rated his performance as "Needs Development" in several competency categories. (Evaluations, ECF No. 117-3 at 2–18, Pg. ID 2803–19.) In 2009, Plaintiff was evaluated as "Needs Development" in not only his "Overall Objective Rating" but also all applicable competency

categories, *i.e.*, customer focus, accountability, teamwork, initiative, decision making/judgment, and leadership. (*Id.* at 2–4, Pg. ID 2803–05.)

In October 2011, Plaintiff's daughter committed suicide, and suffering from the grief, he was subsequently prescribed medication for insomnia, anxiety, and depression around December 2011. (ECF No. 117 at 11–12, Pg. ID 2747-48; Dr. Zakari Dep., ECF No. 117-5 at 4, Pg. ID 2841.) Plaintiff testified, however, that he was never prescribed medication by his doctor, Dr. Zakari[2], prior to November 2012 (his first suicide attempt)—directly contradicting the testimony of Dr. Zakari. (Kheibari 2015 Dep., ECF No. 117-2 at 5, Pg. ID 2778; Dr. Zakari Dep. at 4, Pg. ID 2841.)

Around November 2011, Daniel Snyder ("Snyder") was assigned to Plaintiff's district as the new District Manager, Plaintiff's second-level supervisor. (ECF No. 57 at 4, Pg. ID 939.) Plaintiff alleges Snyder harassed him on the basis of his age and national origin, and testified to the following incidents:

- On March 19, 2012, in a telephone call between the two, Snyder told Plaintiff: "I have a serious problem with your language, with your accent, with your nationality," and "I don't like your language. I don't like

---

[2] Plaintiff testified that Dr. Zakari has been his primary care physician for 10 to 15 years. (Kheibari 2015 Dep. at 5, Pg. ID 2778.)

3

accent. And it's time to go home. I don't want you being in my team."[3] (Kheibari 2017 Dep., ECF No. 117-4 at 6, Pg. ID 2825.)

- Around April and May 2012, Snyder on different occasions visited stores in which Plaintiff was working, shook everyone's hand except for Plaintiff's and ignored him. (*Id.* at 9–10, Pg. ID 2828–29.) Plaintiff also testified that Snyder humiliated him by having a cashier give him a note explaining "this job has to be done" while ignoring him. (*Id.*)

- On July 16, 2012, in a telephone call between the two, Snyder told Plaintiff: "I have serious problem with you. You're too old for this. And your accent, I have problem. . . . I told you one time, why don't you go home, back to your country, and then create a space for new American younger – new American generation. And then let them – you're too old for this." (*Id.* at 13, Pg. ID 2833.)

- At an unspecified time, during a conversation with Snyder in which Plaintiff had an issue with a shift supervisor whom he trained and whom was promoted to General Manager (Plaintiff being an assistant/floating

---

[3] Although Plaintiff testified that after this incident he began fearing that he might be terminated from his position, Plaintiff did not testify to nor offer any evidence that at that time he was formally disciplined, directed to leave his shift, or terminated from his employment.

manager), Snyder told Plaintiff: "It's time to go home. You're old." (*Id.* at 14–15, Pg. ID 2833–34.)

- On November 7, 2012, Plaintiff appeared for a scheduled job interview for a promotion to General Manager. (Kheibari 2015 Dep. at 14, Pg. ID 2787.) Plaintiff testified the following conversation took place between him and Snyder:

    > He asked me, "Are you here to apply for this position?" I said "Yes." He said, "You are too old for this." And then he told me "You cannot do this on my watch." And I said "Why?" He said, "Well, because I don't like your language and I have a problem with your accent and you are too old for this. It's time to go home."

- On other occasions in November 2012, Snyder visited stores in which Plaintiff was working, and on one occasion Snyder told Plaintiff: "I have serious problem about your age, accent, and country of origin. It's time to go home. I'm not going to promote you." Then Snyder proceeded to "micromanage" Plaintiff. (Kheibari 2017 Dep. at 15, Pg. ID 2834.)

- In April and May 2012, on occasion during conference calls with 25 to 30 managers, Snyder told Plaintiff when he attempted to speak: "I have problem with your accent. I cannot understand you. So why you are not taking notes from the other managers?" Plaintiff described this incident saying, "Politely, he was telling me shut up." (*Id.* at 10, Pg. ID 2829.)

5

- Finally, Plaintiff's other supervisor, Beth Spirko, became less friendly and lowered the ratings on his performance evaluation. Plaintiff asserts Ms. Spirko's conduct was due to both his age (because Ms. Spirko previously asked him his age) and Snyder directing her to do so (as a result of Snyder's animus toward Plaintiff's national origin). (*Id.* at 17, Pg. ID 2836; Kheibari 2015 Dep. at 10–11, Pg. ID 2783–84.)

On November 14, 2012, Plaintiff wrote an email to Rite Aid's CEO and President, among others, claiming that Snyder violated state and federal law and that he did not feel safe. (ECF No. 57 at 12–13, Pg. ID 947–48.) He received a call from Rite Aid's human resources vice president informing him that Rite Aid would investigate his claim, but it would take a long time and no immediate action would be taken. (*Id.* at 13–14, Pg. ID. 948–49.) On November 23, 2012, after closing the store, Kheibari attempted suicide in the Rite Aid break room, leaving a note asserting the cause—the discrimination he faced at Rite Aid. (*Id.* at 14, Pg. ID 949.) Kheibari was hospitalized and began medical leave. (ECF No. 117 at 12, Pg. ID 2478.) After about seven months of leave, on June 26, 2013, Rite Aid terminated Kheibari's employment for failure to return to work. (*Id.*) On September 26, 2017, Kheibari passed away after another suicide attempt. (ECF No. 78.)

## Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

**Applicable Law & Analysis**

Plaintiff's harassment claims fall into three categories: claims for harassment based upon age under the ADEA and ELCRA (Counts V and VII), claims for harassment based upon national origin under Title VII and ELCRA (Counts I and II), and a claim of retaliatory harassment under ELCRA (Count X).

*Plaintiff's Age Harassment Claims*

To state a hostile work environment claim for age-based harassment under the ADEA and ELCRA , Plaintiff must establish that: (1) he was 40 years or older; (2) he was subjected to harassment, either through words or actions, based on age; (3) the harassment has the effect of unreasonably interfering with his work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) some basis for liability exists on part of the employer, Rite Aid. *See Shrivastava v. RBS Citizens Bank, N.A.*, 227 F. Supp. 3d 824, 846 (E.D.

Mich. 2017). In determining whether the harassment unreasonably interfered with Plaintiff's work performance, courts consider the totality of the circumstances, including the severity of conduct, frequency of conduct, whether it was physically threatening or humiliating or merely offensive, and whether it unreasonably interfered with Plaintiff's performance. *Id.* A hostile work environment claim cannot proceed unless the plaintiff subjectively perceives an abusive environment; however, the claim also cannot proceed unless the abuse is "severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive." *Id.* at 846–47 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993*)); see also Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 835-36 (6th Cir. 1996) ("the appropriate viewpoint for determining the severity or pervasiveness is an objective one").

Plaintiff's allegations of age-based harassment fall into 3 categories: (1) Snyder stating on multiple occasions that Plaintiff was "too old"; (2) Snyder refusing to interview Plaintiff for a general manager position because of his age (and language, accent, and national origin); and (3) Spirko's poor evaluations as a result of Plaintiff's age.

First, Plaintiff contends Spirko evaluated him negatively based on his age simply because she once asked him his age. Asking an employee their age cannot, standing alone, imply age-related animus. There is no other evidence that any of

Spirko's conduct was motivated by age-based animus. Also, Plaintiff previously received evaluations from supervisors rating him poorly (as "Needs Development" is the lowest rating possible on Plaintiff's evaluations). To find age-based harassment under these circumstances would require a string of tenuous inferences that this Court cannot make. Thus, the Court concludes Spirko's poor evaluation of Plaintiff does not constitute harassment under the circumstances.

Plaintiff's allegations of harassment by Snyder consisted of being told that there was a problem with his age and, on multiple occasions, that he was "too old." There is little doubt that this constitutes harassing comments and that Plaintiff found these comments subjectively abusive. These incidents are offensive, reprehensible and shameful. Disappointingly, however, applicable case law has not found similar comments sufficiently severe that a reasonable person would find them hostile or abusive. *See, e.g., Shrivastava*, 227 F. Supp. 3d at 847 (summary judgment granted where Plaintiff was chastised for being slow, asked when she would retire, and given less opportunities than younger co-workers); *Crawford*, 96 F.3d at 836 (finding "two comments that are objectively indicative of age-based animus"—"women over 55 should [not] be working" and "old people should be seen and not heard"—insufficient to survive summary judgment on hostile work environment claim); *Peecook v. Nw. Nat'l Ins. Grp.*, 1998 U.S. App. LEXIS 18265, at *9 (6th Cir. Aug. 3, 1998) (unpublished) (holding employer's comment "perhaps

you are too old to change" was neither severe nor pervasive enough to create a work environment that could be described as objectively hostile or abusive); *Snyder v. Pierre's French Ice Cream Co.*, 2012 U.S. Dist. LEXIS 170423, at *36 (N.D. Ohio Nov. 30, 2012) (unpublished) (summary judgment granted on claim where supervisor allegedly made age-related comments to him every day, was yelling, screaming, slamming doors, and verbally abusing Plaintiff, and Plaintiff felt stressed, aggravated, frustrated, humiliated and abused "every day he worked there.")

In addition to the offensive comments concerning his age, Plaintiff alleged that he was denied an interview for a general manager position due to age-related animus (and language, accent, and national origin animus). This allegation might demonstrate an unreasonable interference with Plaintiff's employment. However, evidence demonstrates that Plaintiff was not qualified for the promotion he sought. Throughout his tenure at Rite Aid, he received evaluations noting his need for improvement in several (in 2009, all) competency areas. Also, Plaintiff testified that, prior to being denied the interview, he did not think he should have received a general manager position offered to another younger employee (although he

complained about that employee's qualifications). (Kheibari 2017 Dep. at 15, Pg. ID 2834.[4])

This Court finds that the totality of the circumstances demonstrate that the harassment Plaintiff complains of was not so "severe or pervasive" that it altered the condition of Plaintiff's employment or created a hostile and abusive working environment within the meaning of Title VII or the ADEA. Although Plaintiff alleged multiple occasions where he was subjected to derogatory comments regarding his age, none of the comments were exceptionally severe. Plaintiff was not taunted, teased, or ridiculed. Neither was Plaintiff subjected to any physically threatening or humiliating behavior. Although understandably painful, Plaintiff was subjected to occasional, offensive age-related comments—each purportedly in closed or private conversations with Snyder. Although Plaintiff testified that after these incidents he began fearing that he might be terminated from his position, Plaintiff did not testify to nor offer any evidence that he ever received any formal discipline or demotion, received any formal directive to leave his shift, or was ever subjected to disparate treatment concerning any work-related privilege or duty[5].

---

[4] "Q. Mr. Kheibari, is it your claim you should have received the promotion Harvey Wilson received? A. No. I was complaining about – I was complaining about the promotion. Q. Do you believe that you should have received that promotion? A. No."

[5] Snyder testified that, as of November 2012, Plaintiff was not being disciplined, nor was his employment in jeopardy. (Snyder 2015 Dep. at 12, ECF No. 117-6, Pg. ID 2854.)

Plaintiff's evidence demonstrating that the condition of his employment was affected by his harassment is at best scant. Harsh, rude or offensive criticism from a supervisor[6], without more, does not constitute severe or pervasive harassment. Finally, other than Snyder's comments concerning his age, there is no other evidence that Snyder's, Spirko's, or any other Rite Aid employee's complained of conduct was motivated by Plaintiff's age. Thus, the Court concludes that no reasonable jury could find that Plaintiff's work environment was objectively abusive because any age-related hostility Plaintiff faced was not, under applicable case law, sufficiently severe or pervasive to establish a hostile work environment under the ADEA or Title VII.

*Plaintiff's National Origin Harassment Claims*

To establish a harassment claim based on national origin under Title VII and ELCRA[7], Plaintiff must establish a *prima facie* case by demonstrating that: (1) he was a member of a protected class; (2) he was subjected to unwelcomed harassment; (3) the harassment was based on plaintiff's national origin, (4) the

---

[6] "[T]easing . . . offhand comments, and isolated incidents (unless *extremely* serious) will not amount to discriminatory changes in the "terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

[7] The ELCRA requires an almost identical showing, considering the totality of the circumstances, of an intimidating, hostile, or offensive workplace. *See Radtke v. Everett*, 501 N.W.2d 155, 167 (Mich. 1993); *see also Cotuna v. Walmart Stores, Inc.*, 2016 U.S. Dist. LEXIS 135880, at *14-15 (E.D. Mich. Sep. 30, 2016) (unpublished).

13

harassment unreasonably interfered with the plaintiff's work performance by creating an environment that was intimidating, hostile, or offensive; and (5) the employer knew or should have known about the harassing conduct but failed to take corrective action. *Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885-86 (6th Cir. 2008) (citation omitted).

Plaintiff testified to multiple instances where Snyder lodged offensive comments at him related to his national origin. According to Plaintiff, in each instance Snyder stated the same or similar remark: "I have a serious problem with your language, with your accent, with your nationality." (Kheibari 2017 Dep., ECF No. 117-4.) But "occasional offensive utterances do not rise to the level required to create a hostile work environment because, to hold otherwise would risk changing Title VII into a code of workplace civility." *Philips v. UAW Int'l*, 854 F.3d 323, 327 (6th Cir. 2017). Thus, Plaintiff's hostile work environment claim fails on the fourth prong requiring a demonstration of a hostile or offense environment that unreasonably interfered with work performance.

Again, disappointingly, the Sixth Circuit has found offensive and even bigoted conduct insufficient to establish a hostile work environment claim when it was neither pervasive nor severe enough. *Philips*, 854 F.3d at 328 (granting defendants summary judgment where several racially offensive statements were made over two years); *see, e.g.*, *Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502,

506, 513 (6th Cir. 2011) (finding no hostile work environment where defendant "call[ed] Jesse Jackson and Al Sharpton 'monkeys' and [said] that black people should 'go back to where [they] came from' " among other racist comments); *Reed v. Procter & Gamble Mfg. Co.*, 556 Fed. Appx. 421, 432 (6th Cir. 2014) (unpublished) (no hostile work environment where plaintiff was subjected to race-based comments and his supervisor stood behind him and made a noose out of a telephone cord); *Clay v. United Parcel Service, Inc.*, 501 F.3d 695, 707–08 (6th Cir. 2007) (fifteen racially-motivated comments and instances of disparate treatment over a two-year period were isolated, not pervasive, and therefore not actionable under Title VII). Consistent with precedent, this Court must conclude the same here. "[A] handful of offensive comments and an offensive meeting over a [roughly one-year period] does not clear . . . [the] relatively high bar for what amounts to actionable discriminatory conduct under a hostile work environment theory." *Philips*, 854 F.3d at 328.

Much of Snyder's conduct under applicable precedent would be viewed as insolent or impudent: *e.g.*, ignoring Plaintiff, shaking everyone else's hand, passing a note through another employee, and commenting on Plaintiff's language difficulties during a conference call. There is little evidence to tie this conduct to Snyder's purported national origin animus. Further, none of this conduct affected the conditions of Plaintiff's employment. While Plaintiff alleges that he was

15

denied an interview because of discriminatory animus, as discussed previously, there is objective evidence that Plaintiff was not qualified for the position, nor did he think that he was entitled to a position as a general manager. Other than Snyder's comments concerning his language, accent, and national origin, there is no other evidence actionable under the law that Snyder's or any other Rite Aid employees' complained of conduct was motivated by discriminatory animus. Although Plaintiff's subjective perceptions and his mental and emotional responses[8] to the complained of harassment have been established, there is no evidence that his work conditions or work performance were affected.

With regard to Plaintiff's attempted suicide, Plaintiff argues:

> "Snyder's directly discriminatory conduct was severe and continuous over an eight month period, and resulted in Plaintiff feeling so despondent that he attempted suicide. Not only were Snyder's direct references to Plaintiff's "accent," to his "language," and to his being "old" enough to create a hostile work environment, but the hostile environment was amplified by Snyder's ignoring Plaintiff on Snyder's visits to Plaintiff's store, making fun of Plaintiff on conference calls with other managers listening in, telling Plaintiff directly "I won't promote you," and "you should go home," and more. Under the facts of this case, any reasonable person would react strongly to being told repeatedly by their second-level supervisor that they are "too old" and should "go home" and are 'dirt.'"

---

[8] As discussed previously, there is evidence to suggest that Plaintiff was significantly affected by his daughter's suicide in October 2011 and experienced insomnia, anxiety, and depression as a result throughout the relevant period here; though Plaintiff denied being prescribed the medications about which his doctor testified she prescribed to him.

(Pl. Resp., ECF No. 123 at 17–18, Pg. ID 3126–27.) The only other reference to Snyder's conduct being linked to Plaintiff's suicide comes at the close of Plaintiff's Response: "Plaintiff complained to Snyder about Snyder's own actions. Snyder turned up the heat and caused Plaintiff to be in such despair he attempted suicide." (*Id*. at 18, Pg. ID 3127.)

However, the Court considers: (1) evidence which demonstrates that a year before his first suicide attempt Plaintiff was experiencing, and was prescribed medication for, insomnia, anxiety, and depression as a result of the grief from his daughter's suicide, *see* Dr. Zakari Dep., ECF No. 117-5 at 4, Pg. ID 2841; (2) the harassment alleged was never life threatening or humiliating[9]; (3) the circumstances that Plaintiff argues amplified Snyder's hostility all are, although rude and disrespectful, not sufficiently tied to any age or national origin related animus; (4) Kheibari never experienced any formal adverse employment actions—i.e., he was never formally disciplined or reprimanded for anything attributed to his accent, language or age, nor restricted from participating in the full breath of his

---

[9] Plaintiff was neither mocked nor taunted on a conference call but told that he should acquire notes from others due to his language difficulties. (Kheibari 2017 Dep., ECF No. 117-4 at 48, Pg. ID 2829 (Kheibari testifies that when on a conference call with Snyder and other managers "[Snyder] was saying: Oh, it is Michael again. And everybody was laughing. Michael, . . . I have a problem with your accent. I cannot understand you. So why you are not taking notes from the other managers?")

17

position, nor formally discharged or sent home for any reason related to his protected statuses or the alleged incidents; and (5) Kheibari's own testimony demonstrates that Snyder never called him "dirt," but that Kheibari felt like dirt[10]. Finally, Plaintiff made no indication of what conduct he characterized as "turn[ing] up the heat" to cause Plaintiff's attempted suicide, and therefore it is an unsupported allegation.

Accordingly, the Court is not persuaded that Plaintiff's argument creates a genuine issue of material fact, that is, Plaintiff's suicide attempt, although part of the subjective component of a hostile work environment analysis, does not overcome the objective component which considers whether a reasonable person would consider the alleged conduct to be severe enough to constitute a hostile work environment. Sixth Circuit case law, and the totality of circumstances in this case, dictate that the conduct at issue here, as a matter of law, does not constitute an actionable hostile work environment.

Therefore, the Court concludes that Plaintiff failed to establish a hostile work environment claim based on age or national origin. No reasonable jury could conclude that Plaintiff's harassment was sufficiently severe or pervasive to establish a hostile work environment under the ELCRA, the ADEA, or Title VII.

---

[10] Kheibari 2017 Dep., ECF No. 117-4 at 72, Pg. ID 2835 ("and I was thinking . . . I'm nobody. I'm dirt" when referring to how Kheibari interpreted Snyder's "body language").

18

*Plaintiff's Retaliatory Harassment Claims*

To establish a *prima facie* case of unlawful retaliation under the ELCRA, a plaintiff must demonstrate that: (1) he engaged in a protected activity; (2) this was known by the defendant; (3) the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Gibbs v. Voith Indus. Servs.*, 60 F. Supp. 3d 780, 797 (E.D. Mich. 2014).

Although Plaintiff alleged that he complained to human resources about Snyder's discriminatory conduct, Plaintiff's allegations do not establish a *prima facie* case of retaliatory harassment. A retaliation claim requires that the alleged harasser knew that the protected activity took place. *See Frazier v. USF Holland, Inc.*, 250 F. App'x 142, 148 (6th Cir. 2007) (unpublished) ("The decisionmaker's knowledge of the protected activity is an essential element of the *prima facie* case of unlawful retaliation."); *see also Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 482 (6th Cir. 2008) (unpublished) ("…one cannot retaliate against an employee for engaging in protected activity unless he knew the employee had done so."). Here, there is no evidence that Snyder knew that Plaintiff engaged in a protected activity—*i.e.*, submitting any formal complaint. Snyder denied having any knowledge of any formal complaint until this lawsuit. (ECF No. 66-31 at Pg. ID

1353.)  Moreover, there is no evidence that an adverse employment action was taken by Defendant.  Without any evidence to the contrary, Plaintiff's claim fails.

For foregoing reasons, Plaintiff fails to demonstrate a genuine issue of material fact that he was subjected to a hostile work environment based on age or national origin.  Neither has Plaintiff demonstrated a genuine issue of material fact that he was subjected to retaliatory harassment.  Therefore, Defendant Rite Aid is entitled to summary judgment as a matter of law.

## Conclusion

Accordingly,

**IT IS ORDERED**, that Defendant's summary judgment motion (ECF No. 117) is **GRANTED**.

**IT IS FURTHER ORDERED**, that Plaintiff's amended complaint (ECF No. 57) is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: August 20, 2019